Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| EVELYN RODRÍGUEZ AVILÉS<br><br>Apelante<br><br>v.<br><br>PUEBLO INC., JON DOE, JANE DOE, ASEGURADORA ABC<br><br>Apelados | KLAN202300932 | Apelación Procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm.:<br>PO2022CV03310<br><br>Sobre:<br>Despido Injustificado (Procedimiento Sumario) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Marrero Guerrero

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 7 de diciembre de 2023.

### I.

El 19 de octubre de 2023, la señora Evelyn Rodríguez Avilés (señora Rodríguez Avilés o apelante) compareció ante esta Curia mediante el recurso de epígrafe. Nos peticionó que revoquemos una *Sentencia* emitida el 3 de octubre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI).[1] En esta, el TPI declaró Ha Lugar la sentencia sumaria que solicitó Pueblo (Pueblo o parte apelada).[2] En consecuencia, desestimó la *Querella*[3] que radicó la apelante.

---

[1] Apéndice de la *Apelación*, Anejo 5, págs. 461-463. Archivada y notificada en autos el 10 de octubre de 2023.
[2] *Íd.*, Anejo 3, págs. 11-424.
[3] *Íd.*, Anejo 1, págs. 1-2.

Número Identificador
SEN2023_____

El 20 de octubre de 2023, emitimos una *Resolución* en la que le concedimos a la parte apelada hasta el 21 de noviembre de 2023 para presentar su alegato en oposición.

En cumplimiento con lo solicitado, el 21 de noviembre de 2023, la parte apelada presentó su alegato.

Con el beneficio de la comparecencia de ambas partes, procederemos a pormenorizar los hechos atinentes a este recurso.

**II.**

El caso de marras tiene su génesis el 30 de noviembre de 2022, cuando la señora Rodríguez Avilés interpuso una *Querella* sobre despido injustificado contra Pueblo, John Doe, Jane Doe y Aseguradora ABC, al amparo de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 LPRA sec. 185 *et seq.* (Ley Núm. 80), conocida como *Ley sobre despidos injustificados* y la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118 *et seq.* (Ley Núm. 2), conocida como *Ley de procedimiento sumario de reclamaciones laborales.*[4] Alegó que, desde septiembre de 1977, era empleada de Pueblo por tiempo indeterminado y que la despidieron el 14 de octubre de 2022, sin justa causa, en contravención de la Ley Núm. 80, *supra.* Arguyó que, al momento del despido, se desempeñaba como gerente de la Tienda Ponce Rambla 123, con una jornada mínima de 40 horas semanales y un sueldo de veintitrés dólares con setenta y cinco centavos ($23.75) por hora, correspondiente a novecientos cincuenta dólares ($950.00) semanales, los cuales indicó que equivalían a cuatro mil ciento trece dólares con cincuenta centavos ($4,113.50) mensuales. Por ello, solicitó ciento cincuenta y dos mil novecientos treinta y un dólares ($152,931.00) por concepto de mesada y un mínimo de quince por ciento (15%) para el pago de honorarios de abogados, entre otros.

---

[4] *Íd.*

El 12 de diciembre de 2022, Pueblo contestó la *Querella* y precisó que, al amparo de la Ley Núm. 80, *supra,* se despidió a la señora Rodríguez Avilés por justa causa ante graves violaciones a las normas y políticas de la compañía.[5] Adujo que no tenía derecho a reclamar honorarios de abogados, intereses, costas, ni gastos, y que, en la alternativa, únicamente procedía solicitar quince por ciento (15%) por concepto de honorarios de abogados. Sostuvo que, como empleada exenta, la apelante no era compensada conforme con las horas trabajadas, razón por la que devengaba novecientos cincuenta dólares ($950.00) semanales, equivalentes a tres mil ochocientos dólares ($3,800.00) mensuales. Alegó que Pueblo es una corporación distinta e independiente a Pueblo Supermarkets, Inc. y Pueblo International, LLC. Señaló que no aplicaban las doctrinas de patrono sucesor ni traspaso de negocio en marcha. Por ello, aseveró que, desde el 22 de octubre de 2007, la apelante laboró por catorce (14) años para su corporación, no cuarenta y cinco (45) años tal como se le reclamó. Por último, invocó como defensas afirmativas que la demanda no justificó la concesión de un remedio a favor de la apelante en virtud del procedimiento sumario de la Ley Núm. 2, falta de jurisdicción, insuficiencia en el diligenciamiento del emplazamiento, prescripción, incuria, cosa juzgada, impedimento colateral, entre otros.

El mismo día, el TPI emitió una *Orden* en la que solicitó que la apelante expusiera su posición con respecto a las defensas afirmativas levantadas por Pueblo.[6] En respuesta, el 11 de enero de 2023, la señora Rodríguez Avilés planteó que en este caso no aplicaba la doctrina de patrono sucesor, pero sí la doctrina de traspaso de negocio en marcha.[7] A fin de sostener su postura, adujo

---

[5] *Íd.,* Anejo 2, págs. 3-10.
[6] Tomamos conocimiento judicial de la entrada núm. 6 del expediente digital del caso PO2022CV03310 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Archivada y notificada en autos el 13 de diciembre de 2022.
[7] Entrada núm. 14 del SUMAC, págs. 1-5.

que no fue cesanteada, de modo que trabajó ininterrumpidamente para la parte apelada y que, al momento de su despido, mantenía el número de empleada que se le asignó en el año 1977.

Así las cosas, el 24 de julio de 2023, la parte apelada radicó una *Moción de sentencia sumaria*[8] en la cual esbozó que no existía controversia en los siguientes hechos materiales:

> 1. Pueblo Inc., antes PS Acquisition, Inc., es una corporación doméstica con fines de lucro incorporada bajo la Ley de Corporaciones de Puerto Rico el 15 de agosto de 2007, con el número de registro 174608.
>
> 2. El 3 de agosto de 2007, Pueblo International, LLC. radicó una petición de quiebras ante el Tribunal de Quiebras para el Distrito de Delaware.
>
> 3. El 20 de septiembre de 2007, mediante un contrato de compraventa, PS Adquisition, Inc. (PSA), ahora Pueblo Inc., adquirió algunos activos de Pueblo International, LLC.
>
> 4. El Acuerdo de Compraventa entre Pueblo International, LLC. y Pueblo Inc. especifica las siguientes definiciones, obligaciones y responsabilidades asumidas por el comprador:
> a. Sección 17.1: La sección 17.1 del Acuerdo dispone: "Hired Employees means the Seller's Employees to be hired by the Purchase on the closing date pursuant to Section 12.2 of this Agreement."
> b. Sección 3.3: La sección 3.3 del Acuerdo dispone: "Excluded Liabilities": **"Purchaser shall not assume or be liable for any liabilities** and obligations of Seller **of any nature whatsoever**, including without limiting the foregoing, to product liabilities, **employee liabilities**, workers' compensation claims, liabilities under or arising out of any employee benefit plans and liabilities arising from any and all claims or causes of action that any employee of Seller may have, known or unknown, contingent or otherwise, **resulting from conduct by Seller or its business or from any act or omission of Seller**". (Énfasis suplido)
> c. Sección 12.1: La sección 12.1 del Acuerdo dispone: "Under no circumstances shall Purchaser assume or be obligated to pay, and neither the property nor Purchased Assets shall be or become liable for or subject to, any claims of or liabilities of Seller's Employees, including but not limited to, salaries, vacations, sick pay, incentives, bonus, overtime, meal period, pension profit sharing retirement and/or deferred compensation and any other compensation or benefits (the "Employee Claims"). **Which Employee Claims shall be and remain the liability, responsibility and obligation of Seller, including without limitation**:
> (a) any and all liabilities or obligations (including without limitation any and all penalties, fines, settlements, interests, costs or expenses) arising out of or incurred in connection with any and all claims, litigation or Legal Proceedings associated with, arising out of or in connection with any and all claims, litigation or Legal Proceedings (whether instituted prior to or after the Closing) of any Employee (whether hired by Purchaser or not), for any negligent or willful acts, errors,

---

[8] Apéndice de la *Apelación*, Anejo 3, págs. 11-424.

omissions, breach of contract, misconduct, termination, **employee seniority accrued while employed with Seller and successorship liability**, discrimination or discriminatory practices, asserted by or committed against any Employee, whether known or unknown, which occurred or arise from events that occurred, prior to the Closing Date **except for any severance liability that may accrue with respect to the Hired Employees after the Closing Date which is within the scope of the Assumed Liabilities, but <u>in such cases the Hired Employees' seniority while employed with the Seller shall not be imposed upon Purchaser for any purpose under law or contract.</u>"**

5. El contrato de compraventa de algunos activos dispone, además, que Pueblo Inc. no respondería por reclamos de empleados de Pueblo International, LLC. al amparo de la Ley 80-1976.

6. Esta transacción fue autorizada por el Tribunal de Quiebras el 25 de septiembre de 2007.

7. En su Orden, el Tribunal de Quiebras dispone que:
(G) Except as expressly permitted or otherwise specifically provided by the Purchase Agreement or this Order, **all persons and entities, including but not limited to**, all debt security holders, **government**, tax and **regulatory authorities**… **and any other third parties holding Interest of any kind or nature whatsoever against or in the Debtors or the Assets**… arising under or out of, in connection with, or in any way relating to, the Debtor's, the Assets, the operation of the Debtor's business prior to the Closing, **or the transfer of the Assets to the Successful Bidder, hereby are forever barred, estopped, and permanently enjoined from asserting against the Successful Bidder… or the Assets**.

8. Tras ser notificada sobre la radicación de un procedimiento de quiebras, el 7 de agosto de 2008, la Sra. Rodríguez Avilés sometió ante el Tribunal de Quiebras del Distrito de Delaware dos reclamaciones contra Pueblo International, LLC por la mesada y años trabajados, identificadas con los números 3900086 y 3901565 respectivamente.

9. El 19 de octubre de 2007, la Sra. Rodríguez Avilés completó una solicitud de empleo en la que notificó a Pueblo Inc. que ya no trabajaba para su patrono anterior, Pueblo International, LLC por razón de cesantía.

10. De hecho, la propia querellante admitió bajo juramento que no tiene reclamación alguna contra Pueblo International.

11. En esa misma fecha, 19 de octubre de 2007, Pueblo Inc. le extendió un nombramiento a la querellante como nueva empleada de la corporación, en calidad de Coordinadora de Provisiones.

12. Durante su empleo con Pueblo Inc., la Sra. Rodríguez Avilés también se desempeñó en otras posiciones tales como: (1) Coordinadora de Efectivo y Ventas, Merma y Saneamiento; (2) Gerente de Operaciones y (3) Asistente de Gerente.

13. El 5 de marzo de 2008, la Sra. Rodríguez Avilés recibió copia del Manual de Empleados de Pueblo Inc.

14. La Sra. Rodríguez Avilés reconoce además que, a través de su empleo con la querellada, recibió copia de las políticas y normas de Pueblo Inc., incluyendo sus revisiones, y participó de talleres y orientaciones.

15. Además de tener conocimiento del Manual de Empleados, así como de las políticas y normas de Pueblo Inc., la Sra. Rodríguez Avilés implementaba las mismas como parte de sus funciones.

16. De hecho, la Sra. Rodríguez Avilés reconoce incluso que, como parte de sus funciones, participaba de los procesos de disciplina de empleados.

17. Conforme al Manual de Empleados de Pueblo, la conducta hostil, agresiva o amenazante no será tolerada en el lugar de trabajo.

18. Asimismo, según el Manual, toda conducta no aceptable considerada seria o grave, o la repetición de una conducta no aceptable, conllevará la terminación de empleo.

19. De conformidad con dicho Manual, se considera una conduta no aceptable seria o grave, entre otras cosas: (1) mentir, obstruir o no cooperar en procesos de investigación; (2) incurrir en actos de violencia o acoso de cualquier índole hacia empleados, clientes o algún visitante; (3) incurrir en actitudes negativas que afecten la buena reputación, imagen o cultura de servicio de la Compañía; (4) crear o promover un ambiente de trabajo hostil y negativo y; (5) observar conducta impropia o que afecta el normal y buen funcionamiento de la empresa.

20. En aquellos casos que surjan situaciones no contempladas por el Manual de Empleados de Pueblo Inc., la Compañía ejercerá su mejor criterio a tono con las prácticas usuales y comúnmente observadas en el mercado donde opera.

21. A pesar de conocer las normas de la empresa, la Sra. Rodríguez Avilés reiteradamente incurrió en conducta impropia, lo que generó múltiples quejas de compañeros y clientes en su contra por lo que fue amonestada.

22. En marzo de 2015, la querellada realizó una investigación con motivo de un incidente en la oficina de servicio al cliente de la tienda Pueblo, la Rambla en Ponce.

23. Al ofrecer su versión de los hechos por escrito, la querellante admitió no haber procedido de la manera correcta al [dirigirse] a su compañera de trabajo, Genoveva Velázquez, e incluso, admitió que un cliente que estaba en el área se fue de la tienda al escuchar los gritos provocados por el incidente.

24. A raíz de la investigación de este incidente, el 16 de marzo de 2015 se le impartió una amonestación escrita formal y final a la querellante.

25. Como parte del proceso, se le apercibió a la Sra. Rodríguez Avilés que, de incurrir en conducta similar, se procedería con su terminación de empleo por justa causa y, como medida preventiva, se le trasladó a la tienda de Arroyo.

26. El 16 de mayo de 2016, el empleado José Lugo Maldonado, Meat Manager de la tienda de Plaza del Caribe

en Ponce, presentó una queja en la que indicó sentirse incómodo con la Sra. Rodríguez Avilés por la manera en que ésta se dirigía hacia él, así como otras acusaciones y/o comentarios.

27. Tras recibir la queja del Sr. José Lugo, el 5 de julio de 2016, el Sr. Belford González, gerente de la tienda de Ponce en ese momento, se reunió con la querellante y le solicitó un escrito del incidente.

28. Ese mismo día –5 de julio de 2016– el Sr. Belford González también le solicitó un escrito a la querellante con relación a un incidente con la clienta Zoraida Quirindongo ("Sra. Quirindongo").

29. En su queja, la Sra. Quirindongo indicó que durante el incidente, la querellante comenzó a "gritar frente a todos los clientes" y se quejó de la "actitud de confrontación" de ésta.

30. El 19 de octubre de 2016, se le solicitó un escrito a la Sra. Rodríguez Avilés tras recibirse una queja por parte de la cliente, Myrna Pallens ("Sra. Pallens").

31. En su escrito, la Sra. Pallens expresó ser cliente de Pueblo y que nunca esperó ser tratada de "esta manera por una empleada".

32. Además, la Sra. Pallens enfatizó el poco profesionalismo demostrado por la querellante, quien le gritó "que hablara con quien le diera la gana", tras ésta indicarle que hablaría con su supervisor.

33. A raíz del incidente con la Sra. Pallens, el personal gerencial de Pueblo le llamó la atención a la querellante en cuanto al manejo de la situación.

34. El 18 de noviembre [de] 2016, el Departamento de Recursos Humanos citó a la querellante con el propósito de atender su conducta maltratante que nuevamente había sido señalada y la cual había sido traída a la atención de la empresa en varias ocasiones, tanto por empleados, suplidores y clientes.

35. Como parte del proceso, se le advirtió a la querellante que, debía cuidar su conducta y observar los valores institucionales y que no hacerlo tendría consecuencias, incluyendo el despido.

36. El 23 de junio de 2022, el Sr. Nelson Vélez, Vicepresidente de Recursos Humanos de Pueblo y el Sr. William Cristóbal, Director de Distrito, sostuvieron una conversación telefónica con la querellante.

37. En dicha conversación telefónica del 23 de junio de 2022, se discutieron varios señalamientos presentados a Pueblo Inc. por correo electrónico, con relación a la querellante y otras dos (2) empleadas.

38. Entre los señalamientos realizados se indicó que, (1) la querellante utilizaba vocabulario inapropiado (obsceno); (2) que en la tienda el ambiente era hostil; (3) discriminación por religión, entre otros.

39. El 13 de septiembre de 2022, el empleado Orlando Rodríguez ("Sr. Rodríguez") renunció a su puesto como Deli/Bakery Manager.

40. En su renuncia, el Sr. Rodríguez señaló que el ambiente laboral en la tienda de la Rambla 123 era "uno de constantes amenazas, insultos y humillaciones de parte de la gerente Evelyn Rodríguez".

41. Tras la renuncia del Sr. Orlando Ortiz ("Sr. Ortiz"), el 21 de septiembre de 2022, el Sr. Miguel Nieves, Director de Distrito, y el Sr. [Nelson] Vélez, Vicepresidente de Recursos Humanos, se reunieron con éste con motivo de las alegaciones contenidas en su carta de renuncia.

42. En esta reunión del 21 de septiembre de 2022, el Sr. Ortiz expresó entre otras cosas que; (1) la querellante les amenazaba con darles "una 102" (amonestación escrita); (2) utilizaba el nombre de Miguel Nieves para amenazarlos; (3) les decía que "si no pueden hacer el trabajo ahí está la puerta"; (4) que la querellante alzaba la voz bien fuerte, gritaba; (5) que la querellante les hacía sentir que no valían nada; (6) que la querellante decía que todo lo bueno que sucede en la tienda es por ella.

43. El 22 de septiembre de 2022 la Sra. Carmen Ivette Benítez, Gerente de Recursos Humanos de Pueblo, junto al Sr. Miguel Nieves, Director de Operaciones, llevaron a cabo una investigación sobre el ambiente de trabajo en la tienda de Ponce, Rambla 123.

44. Como parte de dicha investigación, se entrevistó a las Asistentes, Marimer Alvarado y Miriam Lind.

45. De la investigación surgió, entre otras cosas que: (a) los empleados se referían a la querellante como "Huracán Categoría 5" por la manera en que los maltrataba; (b) "las [amenazas] detrás del nombre de Miguel Nieves son 24/7"; (c) la querellante "no usa un tono sutil, no mide el tono, es volátil"; (d) la querellante "tiene cambios de temperamento"; (e) la querellante utilizaba la expresión "si no le gusta que se vaya", "que ella es la Gerente y que había que hacer lo que ella dijera"; (f) la querellante "llama la atención en público, frente de empleados y clientes"; (g) empleados se han "encerrado a llorar en el cooler"; (h) la querellante "le dijo a Lourdes Serrano que no servía"; (i) la querellante comentó que "si salía mal en una visita las cabezas iban a rodar".

46. Así las cosas, el 14 de octubre de 2022 se citó a la querellante a una reunión en las oficinas centrales de la querellada como parte de la investigación interna sobre el ambiente laboral.

47. Durante el proceso, se le hicieron una serie de preguntas a la querellante, las cuales tuvo la oportunidad de contestar por escrito.

48. Basado en los hallazgos de dicha investigación interna, la querellante fue despedida el 14 de octubre de 2022.

49. El despido de la querellante fue el resultado de violaciones graves a las normas y políticas de la compañía tales como: mentir durante investigación interna, acoso laboral, ambiente laboral hostil, deshonestidad, conducta impropia que razonablemente podría afectar los mejores intereses de la compañía, entre otras.[9]

---

[9] *Íd.,* en las págs. 14-22.

Por ello, estableció que al TPI le correspondía resolver las siguientes controversias de derecho: si el despido de la apelante estuvo justificado a la luz de la Ley Núm. 80, *supra*; si aplicaba la doctrina de patrono sucesor, y si Pueblo adquirió un negocio en marcha respecto a Pueblo Supermarkets, Inc. y Pueblo International, LLC.

Por su parte, la señora Rodríguez Avilés presentó una *Oposición a "moción de sentencia sumaria"*,[10] y señaló que estaban en controversia los hechos incontrovertidos 2, 6, 9, 10, 11, 21, 23, 24, 34, 35, 38, 45, 46, 47, 48 y 49. En síntesis, arguyó que la corporación que radicó la petición de quiebra fue Nutritional Sourcing Corporation, no Pueblo. Estableció que no completó la solicitud de empleo con Pueblo voluntariamente, dado que se le exigió como condición para continuar laborando en el supermercado. A su vez, subrayó que dicha solicitud de empleo fue otorgada por Campo Rico Warehouse and Distribution Center, Inc., no Pueblo. Manifestó que se le adjudicó culpa de incidentes, conducta impropia y maltratante, y violaciones graves a las normas y políticas de la compañía, adoleciendo de información sobre los hechos constitutivos de tales conductas y desconociendo quiénes fueron los empleados, proveedores o clientes que la reportaron.

Por otro lado, presentó recelo por el motivo de la queja instada por la clienta Myrna Pallens, quien alegó que la apelante sostuvo una relación amorosa con su esposo. Con respecto a una minuta sobre una reunión que Pueblo estableció que se celebró en conjunto con la apelante, esta disputó la existencia de dicha reunión y la firma del documento dado que no recuerda haber asistido a dicha reunión. Asimismo, negó haber incurrido en conducta obscena, discriminación por religión ni propiciar el ambiente hostil que un

---

[10] *Íd.,* Anejo 4, págs. 425-460.

empleado alegó experimentar en la Tienda Ponce Rambla 123. Referente a las preguntas realizadas a las empleadas Marimer Alvarado y Miriam Lind en las que relataron el sentir y comentarios de otros compañeros de trabajo sobre la apelante, esta esgrimió que no tuvo la oportunidad de ser entrevistada. Además, dispuso que la alusión a los comentarios de los empleados sobre su conducta constituyó prueba de referencia dado que, sin ser testigos en el pleito, se ofrecieron en evidencia para probar la verdad de lo aseverado sin autenticación. Por último, cuestionó cómo las sesenta y cinco (65) preguntas que Pueblo le cursó influyeron en la decisión para despedirla al ser cursadas el mismo día de su despido. Fuera de cuatro (4) páginas, no sucesivas, de lo que aparenta ser la transcripción de una deposición que se le tomó, no incluyó prueba documental alguna. Tampoco incluyó su declaración jurada.

El 13 de octubre de 2023, el TPI emitió una *Sentencia* en la declaró Ha Lugar la *Moción de sentencia sumaria* y desestimó la *Querella* objeto de este recurso.[11]

Inconforme, la señora Rodríguez Avilés acudió ante nos en virtud de este recurso de apelación, en el que le imputó al TPI la comisión del siguiente error:

> **ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA (JUEZ FRANCISCO J. ROSADO COLOMER) AL DESESTIMAR EL CASO, MEDIANTE SENTENCIA SUMARIA, CUANDO EXISTEN CONTROVERSIAS SOBRE HECHOS MATERIALES.

El 21 de noviembre de 2023, Pueblo presentó un *Alegato de la parte apelada Pueblo Inc* en el que aseveró que los planteamientos de la apelante se deben tener por no puestos dado que, en su mayoría, se basaron en meras conjeturas, generalidades y explicaciones no sustentadas que no constituyeron prueba ni controvirtieron los hechos materiales del caso. Además, indicó que los documentos que acompañaron la solicitud de sentencia sumaria

---

[11] *Íd.,* Anejo 5, págs. 461-463.

constituyeron una excepción a la exclusión de prueba de referencia por ser récord de negocio y el señor Nelson Vélez, vicepresidente de Recursos Humanos de Pueblo, y custodio de los récords del personal, otorgó una declaración jurada.

Luego de examinar el expediente de autos, procedemos a exponer las normas jurídicas atinentes a este recurso de apelación.

**III.**

**A.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Service*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 430 (2013). Los hechos materiales son aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Dicha controversia sobre el hecho material debe ser real. *Íd.* A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. *Íd.* págs. 2013-2014 *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

Mediante este mecanismo, una parte contra la cual se ha presentado una reclamación puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta. De esta forma se promueve la descongelación de calendarios,

así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. ***Vera v. Dr. Bravo***, 161 DPR 308, 331-332 (2004).

El promovente de este recurso deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, <u>*Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*</u>, 2017, pág. 317.

Por su parte, la Regla 36.2 de Procedimiento Civil, *supra*, R. 36.2, dispone que la parte promovente deberá establecer, con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia. Además, según la Regla. 36.3 de Procedimiento Civil, *supra*, R. 36.3, tendrá que desglosar, en párrafos numerados, los hechos respecto a los cuales aduce que no existe disputa, así como especificar la página o párrafo del documento que sirva de apoyo a su alegación.

De otro lado, el promovido ante una solicitud de sentencia sumaria tiene el deber de controvertir la prueba presentada por la parte promovente de la moción. Este no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. Regla 36.3 (c), *supra*, R. 36.3 (c); ***SLG Zapata-Rivera v. JF Montalvo***, *supra*; ***Ramos Pérez v. Univisión***, *supra*, pág. 215; ***Cruz Marcano v. Sánchez Tarazona***, 172 DPR 526, 550 (2007).

En otras palabras, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que están en disputa". ***León Torres v. Rivera Lebrón***, 204 DPR 20, 44 (2020). Por lo que, se requiere que la oposición a la moción de sentencia sumaria contenga:

> [U]na relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal. Regla 36.3 (b) (2) de Procedimiento Civil, *supra*, R. 36.3 (b) (2).

Si la parte promovida no cumple con los requisitos impuestos por la mencionada regla, el tribunal podrá resolver en su contra de entenderlo procedente. Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c). Véase, además, ***Cruz Marcano v. Sánchez Tarazona***, *supra*; ***SLG Zapata-Rivera v. JF Montalvo***, *supra*, y ***Ramos Pérez v. Univisión***, *supra*.

No obstante, "**el sólo hecho de no presentar evidencia que controvierta la presentada por la parte promovente no implica que la sentencia sumaria procederá automáticamente**". ***Jusino et als. v. Walgreens***, 155 DPR 560, 578 (2001) (Énfasis nuestro).

Pues, la moción de sentencia sumaria debe resolverse conforme al derecho sustantivo aplicable, y si de las propias alegaciones, admisiones o declaraciones juradas surge alguna controversia, no procede disponer del asunto sumariamente. ***Ortiz v. Holsum***, 190 DPR 511, 525 (2014). En este sentido, al evaluar los documentos presentados por las partes, el tribunal deberá utilizar el principio de liberalidad a favor del opositor de la moción. ***Ramos Pérez v. Univisión***, *supra*, págs. 216-217. De haber dudas sobre la existencia de controversias de hechos materiales, deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. ***SLG Fernández-Bernal v. RAD-MAN***, 208 DPR 310, 335-336 (2021); ***Meléndez González et al. v. M. Cuebas***, 193 DPR 100, 138 (2015). "La sentencia sumaria sólo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes". ***Corp. Presiding Bishop CJC of LDS v. Purcell***, 117

DPR 714, 721 (1986). Esto, con el propósito de evitar que una de las partes se vea impedida de ejercer su día en corte. *Íd.*

Igualmente, no es aconsejable utilizar el mecanismo de la sentencia sumaria cuando "existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor de la credibilidad es esencial". ***Carpets & Rugs v. Tropical Reps.***, 175 DPR 615, 638 (2009).

Por otro lado, la Regla 42.2 de Procedimiento Civil, *supra*, R. 42.2, establece que, en todos los casos, el tribunal especificará los hechos probados, consignará por separado sus conclusiones de derecho y ordenará que se registre la sentencia correspondiente. No obstante, la citada Regla dispone que: "[n]o será necesario especificar los hechos probados y consignar separadamente las conclusiones de derecho: (a) al resolver mociones bajo las Reglas 10 o 36.1 y 36.2 o al resolver cualquier otra moción, excepto lo dispuesto en la Regla 39.2". *Íd.*

De otra parte, en ***Meléndez González et al. v. M. Cuebas***, *supra*, el Tribunal Supremo estableció el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o concesión de una moción de sentencia sumaria. Dictaminó que: "[e]l Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de Sentencia Sumaria". *Íd.* págs. 21-22. La revisión que realice el foro apelativo deberá ser de *novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. ***Vera v. Dr. Bravo***, *supra*, 334-335. Todas las inferencias permitidas deberán ser a favor de la parte oponente a la moción de sentencia sumaria, de forma que se evalúe el expediente de la manera más favorable hacia dicha parte. ***Meléndez González et al. v. M. Cuebas***, *supra,* pág. 118. Además, deberá constatar que las partes cumplan con los requisitos de forma que dispone la Regla 36 de Procedimiento Civil, *supra*, R.

36, tanto en la moción de sentencia sumaria, como en la oposición, y deberá revisar si existen hechos materiales en controversia. *Íd.* Si existiesen, el foro apelativo tendrá que exponer los hechos en controversia y los que no, como dispone la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4. Si el Tribunal Apelativo no encuentra hechos controvertidos, deberá revisar de *novo* si el foro inferior aplicó correctamente el derecho. *Íd.* pág. 119.

**B.**

En el ámbito laboral, la Ley Núm. 80, *supra,* se aprobó con el fin de proteger al empleado de no ser despedido de su empleo sin una causa que lo justifique. Es decir, la Ley Núm. 80, *supra,* protege al obrero que ha sido privado injustificadamente de su trabajo, y desalienta este tipo de despido al imponer al patrono el pago de una indemnización conocida como la mesada. ***Nieves Cruz v. UPR***, 151 DPR 150, 158-159 (2000). En virtud de su propósito reparador, esta ley siempre debe interpretarse de forma liberal y favorable al empleado. ***Rivera v. Pan Pepín***, 161 DPR 681, 690 (2004).

Ahora bien, en su Artículo 2, la Ley Núm. 80, *supra,* especifica las circunstancias bajo las cuales un despido se considera justificado, en lo pertinente: (a) el patrón de conducta impropia o desordenada del empleado; (b) la actitud del empleado de no rendir su trabajo de forma eficiente, o de realizarlo tardía y negligentemente, o en detrimento de las normas de calidad del producto del cual se trate; (c) violación reafirmada del empleado a las reglas y reglamentos razonables para el normal funcionamiento del establecimiento, siempre que haya obtenido una copia de éstas por escrito; entre otras. 29 LPRA sec. 185b. Igualmente, el despido no podrá estar motivado por razones legalmente prohibidas o por el mero capricho del patrono. *Íd.*

El patrono tiene la facultad de adoptar las normas de empleo que entienda necesarias para el buen funcionamiento de la empresa,

siempre que cumpla con los criterios de razonabilidad. ***Jusino et als. v. Walgreens***, *supra,* pág. 573; ***Srio. del Trabajo v. ITT***, 108 DPR 536, 542 (1979). A saber, debe demostrar: (1) que las normas de empleo son razonables; (2) que le suministró copia de dichas normas al empleado, y (3) que el empleado violó reiteradamente las aludidas normas. ***Jusino et als. v. Walgreens***, *supra.*

Por otro lado, la Ley Núm. 80 desalienta el despido como sanción por una primera falta. *Íd.,* ***Srio. del Trabajo v. ITT***, *supra.* No obstante, la primera falta puede lugar al despido como sanción si el acto cometido por el empleado es "de tal seriedad o naturaleza, tan grave, tan lesiva a la paz y al buen orden de la empresa, que resulte imprudente tener que esperar su reiteración para destituir al empleado". ***Jusino et als. v. Walgreens***, *supra.*

Con respecto a la viabilidad de solicitar daños en conjunto con una reclamación por despido, en ***Ramos Pérez v. Univisión***, *supra,* pág. 222, el Tribunal Supremo expresó: "[a]nte un despido es posible una reclamación en daños independiente a la Ley Núm. 80, *supra,* 'si con el despido concurren otras actuaciones torticeras, que sean independientes al mismo' y que demuestren otro fin". *Íd.* pág. 227, *citando a* **Soc. de Gananciales v. Royal Bank de PR**, 145 DPR 178, 193 (1998).

### C.

Las Reglas de Evidencia del 2009, 32 LPRA Ap. VI, R. 101 *et seq.*, regulan la forma en que se admitirá la prueba en los tribunales. La Regla 801 de Evidencia, *Íd.* R. 801, establece que prueba de referencia "[e]s una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Como regla general, la prueba de referencia es inadmisible en evidencia, salvo que por ley se disponga otra cosa. *Íd.* R. 804. Es decir, la prueba de referencia es una regla de exclusión de evidencia, salvo que se identifique una excepción.

La razón de la exclusión de la prueba de referencia versa en el propósito del derecho probatorio: la búsqueda de la verdad de los hechos, puesto que adolece de las garantías de confiabilidad investidas por un testimonio en el tribunal, bajo juramento, frente a la parte perjudicada por la declaración, frente al juzgador de hechos y sujeto a contrainterrogatorio. E. L. Chiesa Aponte, *Tratado de derecho probatorio: Reglas de Evidencia de Puerto Rico y Federales*, República Dominicana: Editora Corripio, 1998, T. II, págs. 616-617.

Para fines de la prueba de referencia, una declaración se define como una aseveración oral o escrita o una conducta no verbalizada de una persona, si su intención es que se tome como una aseveración. *Íd.* R. 801. Así, toda expresión que no sea una aseveración, no se considerará como una declaración. E. L. Chiesa Aponte, *Reglas de evidencia comentadas*, 1ra ed., San Juan: Ediciones Situm, 2016, pág. 255. Ahora bien, la aseveración que se excluya por ser prueba de referencia tiene que ser presentada con el objetivo de probar la verdad de lo aseverado. *Íd.* pág. 257.

Una declaración que constituya prueba de referencia debe ser tomada cautelosamente dado que entraña cuatro áreas de riesgos con relación a un evento, siendo estas: si el declarante percibió e interpretó correctamente el evento; si el recuerdo del declarante es fiel a lo que observó, en consideración con el tiempo transcurrido, su estado al momento de percibir los hechos, causas orgánicas y la pobre percepción de los hechos; si la narración del declarante es fiel a lo que percibió, y si el declarante es sincero por situaciones como lazos de parentesco o amistad, interés económico, lealtad, oferta de inmunidad, temor a represalias, intimidación, entre otros. **Pueblo v. García Reyes**, 113 DPR 843, 853 (1983); E. Vélez Rodríguez, *La prueba de referencia y sus excepciones*, San Juan: Editorial InterJuris, 2018, págs. 12-16; K. S. Broun *et al.*, *McCormick on*

*Evidence* (J. W. Strong, ed.), 5ta ed., Minnesota: West Publishing Co., 1999, Vol. 2, pág. 93.

Empero, la exclusión de la prueba de referencia no es absoluta dado que existen varias excepciones a la regla general de exclusión. Véase la Regla 805 de Evidencia, *supra*, R. 805. De objetarse la admisibilidad de la prueba basado en que constituye prueba de referencia, la parte proponente de la prueba debe demostrar que: (1) no constituye prueba de referencia o (2) está cobijada por una de las excepciones a la exclusión de la prueba de referencia. ***Rosado Reyes v. Global Healthcare***, 205 DPR 796, 817 (2020).

Una de las excepciones es el récord de actividades que se realizan con regularidad. *Íd.*, R. 805 (F). Un récord de actividades que se realizan con regularidad es:

> Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que éstos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(K) o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad. El término negocio, según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro. *Íd.*

La garantía de confiabilidad de esta excepción es la continuidad, regularidad y cotejo de los récords. E. L. Chiesa, *Tratado de derecho probatorio: Reglas de Evidencia de Puerto Rico y Federales*, *op. cit.*, pág. 803. Importante es que:

> La confiabilidad de la anotación depende en gran medida de su carácter rutinario. Si siempre que ocurre determinado tipo de acto se hace rutinariamente el asiento correspondiente en el récord, la presencia del asiento es indicio de que ocurrió el acto, y la ausencia del asiento es indicio de que no ocurrió. Pero si el asiento o anotación no se hace rutinariamente, sino una veces pero no otras, se

desvanece la garantía de confiabilidad o, al menos, desmerece. La falta de este elemento justifica la exclusión de la prueba de referencia. *Íd.* pág. 810.

Esta excepción contempla cuatro supuestos: (1) que el récord se elaboró durante el curso regular del negocio; (2) que se haya preparado en o próximo al momento del suceso que se refiere el récord; (3) que el custodio del récord o algún otro testigo declare sobre su identidad y método de preparación y (4) que las fuentes de información, método y momento de la preparación del récord indique su confiabilidad. ***HR Stationery, Inc. v. ELA***, 119 DPR 129, 138 (1987). El requisito del testimonio del custodio es fundamental para determinar la confiabilidad del récord, satisfacer el requisito de autenticación previo a la admisibilidad de la prueba y probar la existencia de una actividad que se realiza con regularidad. *Íd.* pág. 139. En dicho testimonio se debe declarar sobre los tres requisitos adicionales para admitir el récord de negocio. *Íd.* págs. 139-140.

Además, para analizar la confiabilidad del récord, se debe considerar: (1) si la información recopilada es importante para el negocio fuera del litigio en el que se ofrece; (2) si el récord contiene información fáctica simple y no meras evaluaciones o conclusiones; (3) si la persona que transmite la información y la persona que practica el asiento, de ser distintas, son independientes de las partes en el litigio; (4) si la información recopilada está corroborada por prueba independiente; (5) si lo preparó una persona con experiencia y (6) si se verificó la exactitud del récord. *Íd.* págs. 142-143.

Importante es que la mera presencia de un documento en un récord no significa que mecánicamente el contenido de dicho documento sea considerado como récord de una actividad regular. ***United States v. Furst***, 886 F.2d 558, 570-572 (3d Cir. 1989); ***White Indus., Inc. v. Cessna Aircraft Co.***, 611 F. Supp. 1049, 1059 (W.D.Mo.1985); ***United States v. Pazsint***, 703 F.2d 420, 424-425 (9th Cir. 1983). Sin embargo:

> Problems may arise when one business organization seeks to introduce records in its possession but actually prepared by another. Obviously, mere possession or "custody" of records under these circumstances does not qualify employees of the possessing party to lay the requisite foundation, and transmittal of information by the custodian regarding the contents of records in the custodian's possession does not qualify the recipient to lay the foundation. However, when the business offering the records of another has made an independent check of the records, has integrated them into their own business operation, or can establish accuracy by other means, the necessary foundation may be established. K. S. Broun *et al.*, *supra*, pág. 262.

Persuasivamente, en la esfera federal, al aplicar la prueba de referencia múltiple en el contexto de la excepción de récord de negocio, se resolvió:

> Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person. If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6). *United States v. Baker,* 693 F.2d 183, 188 (D.C.Cir.1982). However, if the source of the information is an outsider, as in the facts before us, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have. *See United States v. Davis,* 571 F.2d 1354, 1360 (5th Cir.1978). Further, Federal Rule of Evidence 805 requires that all levels of hearsay satisfy exception hearsay requirements before the statement is admissible. **Wilson v. Zapata Off-Shore Co.,** 939 F.2d 260, 271 (5th Cir. 1991)

Considerando la normativa expuesta, resolvemos.

## IV.

En el caso de marras, el TPI dictó una *Sentencia* en la que declaró Ha Lugar la *Moción de sentencia sumaria* promovida por Pueblo, asumiendo como incontrovertidos los hechos propuestos por dicha parte, y, en consecuencia, desestimó la *Querella* presentada por la apelante.

En oposición, la señora Rodríguez Avilés señaló que el TPI erró al desestimar el caso en su contra, toda vez que existían controversias sobre hechos materiales que impedían resolver el caso de forma sumaria. No obstante, no incluyó prueba documental alguna para refutar los hechos propuestos como incontrovertidos

por la parte apelada, más allá de cuatro (4) páginas, no sucesivas, de lo que aparenta ser la transcripción de una deposición que se le tomó. De igual manera, omitió incluir una declaración jurada suya para controvertir los hechos probados por la parte apelada.

Sobre esto último, Pueblo profundizó. En su escrito, adujo que los planteamientos traídos en la *Apelación* debían tenerse por no puestos, toda vez que se basaron en meras conjeturas, generalidades y explicaciones no sustentadas, las cuales no controvirtieron los hechos materiales del caso. Asimismo, defendió la admisibilidad de los documentos que presentó en apoyo a su *Moción de sentencia sumaria*, esbozando que les aplicaba la excepción de récord de negocio a la regla general de exclusión de prueba de referencia.

Tras un análisis objetivo, sereno y cuidadoso de la totalidad del expediente ante nuestra consideración, resulta evidente que no existe controversia alguna respecto a los hechos materiales que impida la desestimación sumaria del pleito. Veamos.

En un primer plano y como cuestión de umbral, cabe establecer que, como foro revisor, esta Curia tiene la encomienda de revisar *de novo* la aludida solicitud de sentencia sumaria, limitado a evaluar la prueba documental presentada ante el foro primario. ***Meléndez González et al. v. M. Cuebas***, *supra*, pág. 118; ***Vera v. Dr. Bravo***, *supra*, 334-335. A su vez, recordamos que "[l]a sentencia sumaria sólo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes". ***Corp. Presiding Bishop CJC of LDS v. Purcell***, *supra*.

En segundo lugar, resulta preciso recabar en que la señora Rodríguez Avilés no refutó los hechos que Pueblo propuso como incontrovertidos en apoyo a su *Moción de sentencia sumaria*. Teniendo la oportunidad para ello, optó por negar o condicionar los hechos alegados sin hacer referencia a los párrafos o páginas de

declaraciones juradas u otra prueba admisible en evidencia en la que se estableciera la procedencia de su versión de los hechos. En suma, presentó únicamente cuatro (4) páginas de una deposición que se le tomó a la propia apelante, las cuales no tienen sucesión lógica entre ellas. De la misma forma, tampoco sometió declaración jurada alguna. Este proceder no fundamentó su argumento en contra de que se dictara sentencia sumaria, ni a la alegada existencia de controversia de hechos ni a la procedencia del derecho a su favor. Por el contrario, como examinaremos más adelante, los hechos que la propia apelante aceptó como incontrovertidos demuestran de plano que su despido estuvo justificado.

En tercer lugar, los hechos según adoptados por el TPI se sostienen por la prueba que obra en el expediente del caso. Ahora bien, para objetar la admisibilidad de dicha evidencia, la señora Rodríguez Avilés adujo que la misma debía ser excluida por tratarse de prueba de referencia. Según planteó, ante la exclusión de dicha prueba, los hechos materiales que el TPI consideró incontrovertidos debían ser rechazados. No le asiste la razón. La declaración jurada del Vicepresidente de Recursos Humanos que acompañó la *Moción de sentencia sumaria* cualifican los documentos como récords de negocios y, de esta forma, resultan admisibles en evidencia. En especial, el *Informe de investigación* fue preparado como una actividad regular de negocio, mediante el mecanismo habitual de recogido de insumo disciplinario de la empresa. Por cierto, dentro del referido procedimiento en el que se produjeron los documentos como récord de negocios, la apelante tuvo la oportunidad de expresarse sobre la materia, lo cual consta en el expediente.

Aún más, la apelante aceptó como incontrovertidos los hechos 36, 37, 39, 40, 41, 42, 43 y 44 según fueron enumerados por Pueblo. De una lectura de estos, resulta evidente que la señora Rodríguez Avilés no disputó varios hechos que desembocaron en su despido.

Por un lado, aceptó que el Director de Distrito sostuvo una conversación telefónica con ella en la que discutieron varios señalamientos con relación a su desempeño. Sin embargo, intentó disputar la veracidad de los señalamientos realizados, los cuales alegó que no se sostenían mediante evidencia. Ahora bien, sobre esta llamada, el funcionario preparó una *Minuta* en la que recogió los señalamientos discutidos por él con la apelante, a saber, que utilizaba vocabulario inapropiado y obsceno, que existía un ambiente hostil y que había discriminado por religión, entre otros. Por otro lado, también aceptó que un empleado renunció a su puesto y citó en su renuncia que el ambiente laboral era de amenazas, insultos y humillaciones por parte de la apelante. Además de aceptado como incontrovertido por la apelante, este hecho consta en el expediente del caso a través de la renuncia del empleado. Asimismo, tampoco disputó que, a raíz de esa renuncia, Pueblo recibió el insumo de otro empleado, quien expresó que la apelante le alzaba la voz, que gritaba y que les hacía sentir que no valían nada. De la misma manera, tampoco puso en duda que, a raíz de esos sucesos, la parte apelada llevó a cabo una investigación sobre el ambiente de trabajo en la tienda, la cual incluyó la entrevista de dos asistentes. Empero, intentó cuestionar los datos que surgieron de dicha investigación, arguyendo su inadmisibilidad por falta de autenticación del documento. Habiendo atendido el asunto de admisibilidad previamente, los hechos arrojados por la investigación se suman a la prueba convincente de que el despido fue justificado. Surgió de la investigación que los empleados tildaron a la apelante como "Huracán Categoría 5" por la forma en que los maltrataba, la apelante no medía su tono de voz y era volátil y tenía cambios de temperamento, los cuales fueron presenciados en público por clientes del establecimiento.

Cabe precisar que, analizados estos hechos aceptados por la señora Rodríguez Avilés, incluso si estimáramos que la prueba objetada por la apelante era inadmisible, el despido estaría justificado. Es decir, los hechos admitidos por la propia apelante demostraron por sí solos que el despido fue justificado.

A la luz de lo anterior, resulta evidente que la señora Rodríguez Avilés no puso en controversia que su despido fue justificado. Su despido respondió justamente a un ambiente laboral hostil de su propia creación y a una conducta impropia que razonablemente podría afectar los intereses de Pueblo. Adviértase que, aún si el peso de la prueba estuviese sobre la parte apelada, teniendo la compañía que demostrar que el despido no fue injustificado, la abrumadora prueba que obra en el expediente dejó de manifiesto que la cesantía de la apelante fue justificada.

Por todo lo anterior, corresponde confirmar la *Sentencia* apelada, toda vez que los hechos aceptados como incontrovertidos por el TPI, los cuales se sostienen por la prueba que obra en el expediente, validan la conclusión de que la *Querella* promovida por la señora Rodríguez Avilés no procede en derecho.[12]

**V.**

Por los fundamentos expuestos, se *confirma* la *Sentencia* apelada.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[12] Ante la improcedencia en sus méritos de la reclamación de la señora Rodríguez Avilés, prescindimos de analizar las alegaciones respecto a la quiebra de Pueblo International, LLC, y la aplicación de las doctrinas argumentadas sobre el particular.